IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

BETTYE EVERETTE                                                                PLAINTIFF

VS.                                        NO. 4:08CV00164

ST. VINCENT HEALTH SYSTEM                                              DEFENDANT

## ORDER

Pending is Defendant's motion for summary judgment. (Docket # 24). Plaintiff has filed a response and Defendant has filed a reply. For the reasons set forth herein, the motion for summary judgment is granted.

### Facts

Bettye Everette ("Everette") is currently employed with St. Vincent as a Home Health Aide ("HHA"). She has worked as a HHA at St. Vincent since 1991. Her duties include assisting patients in their homes with bathing, dressing, and sometimes preparing a light meal. Home Health Aide Supervisors supervise the HHAs and have responsibility for the entire department.

Everette's earliest allegation in her Complaint is her temporary transfer to the Hospice Department in 1998. Everette alleges that the Hospice Department did not have sufficient full time work, and she therefore had to use vacation time if she wanted to be paid for any idle time. St. Vincent transferred Everette to Hospice because her sister, Suzanne Burton, was a supervisor in Home Health. Everette transferred back to the Home Health Department approximately one year later. Everette alleges that former supervisor Jane Evans (white female) was responsible for the transfer. Evans retired from St. Vincent five years ago.

Everette alleges that another former supervisor Carolyn Myrie (African American female) gave her improper evaluations for the years 1998, 1999, 2000, 2002, and 2003. Everette admitted she has no evidence that either Myrie's or Evans' treatment of her was based on race.

Everette alleges DeEtte Stilljes raised her voice on three different occasions over the three to four years Stilljes was Everette's supervisor. Everette admitted that Stilljes never used foul or inappropriate language and Stilljes' comments always related to Home Health business. Stilljes disciplined Everette in December 2006 for a "no call/no show" on December 25, 2006 and for not following scheduling procedures. Specifically, Everette did not call the Home Health Aide scheduler at the end of her shift. Defendant contends that Everette admitted responsibility for the "no call/no show" on Christmas Day and disputed the discipline for the violation of scheduling procedures. Everette claims that she did not admit responsibility for a no call/no show on December 25, 2006. She states that she called in on December 25 and advised the scheduler that her duties had been performed on December 24, which is all that is required. Everette disputes these charges and claims that the scheduling procedures charge was later removed.

Everette alleges that the procedure for calling in at the end of the shift was new policy that was scheduled to go into effect in April 2007. Everette alleges that she was the only Home Health Aide disciplined under this policy, but others had violated the policy. She identified Arnell Henry (African American female), Stacy Wright (white female), Minnie Holly (African American female), Denesha Deloney (African American female), Carmen Wilson (African American female), Trina Baker (white female), and Brittany Kos (white female) as Home Health Aides who were not disciplined for violating this scheduling procedure. Everette complained about this matter to Nellie Duncan in St. Vincent's Human Resources Department. Everette admitted that she did not report to Duncan that she believed Stilljes was taking this disciplinary action against her on account of race. Stilljes revised the written discipline form to include only the "no call/no show," but Everette still refused to sign the form.

Stilljes met with Everette in April 2007 regarding the revised disciplinary form, which had been revised due to Everette's complaint to Human Resources. Everette considered it harassing that Stilljes met with her in April regarding the revised disciplinary form. At this meeting, Everette admitted she told Stilljes, "I thought we were done with that," and asked, "Why are we talking about this?" Everette claims that before this meeting she had met with Stilljes and Looker regarding the disciplinary form and understood that the matter was closed.

Everette alleges that Stilljes harassed her by making an unscheduled visit with Everette in a patient's home in August 2007. She alleges that Stilljes told her she was visiting due to a patient complaint, but Stilljes would not reveal the details. Everette asked the patient and the care giver about any alleged complaints to St. Vincent about her. Everette claims that the patient in question never complained about her. Everette was never disciplined for any complaint or misconduct related to this patient. Everette complained to Home Health Administrator Denise Looker about the unscheduled visit. Everette admitted that she did not report to Looker that she believed this unscheduled visit was harassment on account of race.

On October 8, 2007, Everette was scheduled to work and therefore had to call the scheduler in the morning to confirm her schedule for the day. Everette could not reach anyone to confirm her schedule, so she began her day with the patient she assumed was her first scheduled patient. Once Everette reached a scheduler, the scheduler confirmed that the particular patient was not on Everette's schedule, but Everette would have eight other patients to see that day. Everette complained to her scheduler and later to Stilljes that she could not see a total of nine patients in one day. Everette alleged that Stilljes yelled at her during this conversation about seeing all of her patients, and Everette hung up the phone. The scheduler called Everette back and told her Stilljes said if any other patients did not cancel, Everette could reschedule her last

patient scheduled for that day to the next day.

Everette's primary complaint in her EEOC Charge is that she was scheduled to work on Christmas Day 2007 despite having been scheduled on that day in previous years. Everette claims that the policy had changed and Christmas holiday assignments were to be made alphabetically. Everette and Minnie Holley (African American) were scheduled but not Trina Baker (Caucasian). Defendant contends that while Everette was scheduled to work Christmas Day 2006, she admitted that she was a "no call/no show" that day. She also admitted that she avoided working on Christmas Day in years past when she was scheduled by having patients reschedule for either the day before or the day after Christmas Day. Everette claims that she and others had patients reschedule before and after Christmas and often these arrangements were made by the supervisors.

Everette filed a grievance regarding this issue with St. Vincent's Human Resource Department, which was denied by Chief Operating Officer Ken Haynes as well as an appeals committee of St. Vincent employees. Everette did work Christmas Day 2007, and Stilljes did not schedule Everette to work Christmas Day 2008.

Stilljes disciplined Everette for an incident with a patient on Christmas Eve Day 2007. Stilljes issued Everette a written disciplinary action for canceling a patient's bath on Christmas Eve Day 2007 and falsely reporting that the patient refused services on the day in question. Everette claimed that her car had broken down and after it was repaired she contacted the patient and the patient cancelled because family had arrived.

Stilljes issued Everette a written disciplinary action for switching patients with another aide on Christmas Day 2007, because Everette did not get a supervisor to approve her change to her scheduled patients. Stilljes did not want Everette and Holly to switch patients

because the patient that would be switched to Everette had complained about Everette. Everette disputes that the patient complained about her and claims that she was never required to get a supervisor to clear a patient switch. Further, Minnie Holley with whom she switched was not given written discipline.

In February 2008, Everette refused to sign a written Counseling/Corrective Action Form related to an incident on December 31, 2007. Specifically, Everette did not confirm her schedule before starting her day and began work at a patient's home that was not on her schedule. The written disciplinary form stated that Everette should "confirm schedule with scheduler before starting [her] day." Everette claims she repeatedly tried to reach a scheduler and was not successful.

Everette filed her EEOC Charge on December 17, 2007, and the EEOC issued a Dismissal and Notice of Rights on December 21, 2007. The 180-day limitations period for any potential Title VII claim began on June 20, 2007. Everette has admitted that she has no evidence that Stilljes' conduct was on account of her race. There were no males, either as supervisors or employees in the Home Health Department during any relevant time. Only two of the nine Home Health Aides in Everette's department are white and the rest are African American. Everette points to similarly situated co-workers who are all female and most are African American as comparators who were treated more favorably. Everette admitted that she did not report to the Home Health Administrator Denise Looker or St. Vincent's Human Resource Department that she believed Stilljes was harassing her on account of her race or gender. St. Vincent has developed and distributed an antiharassment and discrimination policy. Everette admitted she is generally familiar with this policy and that the policy is available to her and all employees on-line. Everette admitted that she did not report any

allegations of race or gender discrimination to Home Health Administrator Denise Looker or the St. Vincent Human Resource Department. Defendant contends that Everette's failure to do so was unreasonable. All of the similarly situated employees who did not work on Christmas 2007 were females and many were African American females.

Standard for Summary Judgment

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided solely on legal grounds. *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56. The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial -- whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The Eighth Circuit Court of Appeals has cautioned that summary judgment should be invoked carefully so that no person will be improperly deprived of a trial of disputed factual issues. *Inland Oil & Transport Co. v. United States*, 600 F.2d 725 (8th Cir. 1979), *cert. denied*, 444 U.S. 991 (1979). The Eighth Circuit set out the burden of the parties in connection with a summary judgment motion in *Counts v. M.K. Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the moving party for summary judgment is only to demonstrate, *i.e.*, '[to] point out to the District Court,' that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a

> genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.

*Id.* at 1339. (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-274 (8th Cir. 1988) (citations omitted)(brackets in original)). Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248.

## Discussion

Defendant argues that Everette's claims regarding her transfer to the Hospice Department, poor job evaluations and allegations relating to past supervisors are barred by the statute of limitations. Everette admits that the 180-day limitations period for any potential Title VII claim began on June 20, 2007, but claims that the allegations of events occurring before June 20, 2007 should be considered as part of a pattern and practice by St. Vincent's to create a hostile work environment. Conduct occurring prior to the 180-day period can be grounds for suit only when the conduct is part of a continuing systematic or serial violation and when an act of harassment occurred within the 180-day period that forms a sufficient nexus with the conduct before that period. *Klein v. McGowan*, 198 F.3d 705, 709 (8th Cir.1999). Everette has made no showing of a nexus between her transfer to the Hospice Department in 1998, alleged improper job evaluations for the years 1998, 1999, 2000, 2002, and 2003 or the conduct of prior supervisors Myrie or Evans and the allegations of hostile work environment against Stilljes. Accordingly, those claims are barred by the statute of limitations.

To establish a prima facie case of a hostile work environment, a plaintiff must show: 1) that she was a member of a protected group; 2) the occurrence of unwelcome harassment; 3) a causal nexus between the harassment and his membership in a protected group; 4) that the

harassment affected a term, condition, or privilege of employment; and 5) that the employer knew or should have known of the harassment and failed to take prompt and effective remedial action. *Vajdl v. Mesabi Academy of KidsPeace, Inc*., 484 F.3d 546, 550 (8th Cir.2007).

Claims of hostile work environment require a high evidentiary showing that the workplace was "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id. (quoting Harris v. Forklift Systems, Inc*., 510 U.S. 17, 21 (1993)).  *See also, Al-Zubaidy v. TEK Indust., Inc*., 406 F.3d 1030, 1039 (8th Cir.2005) (holding that lower courts must apply "demanding harassment standards" when considering hostile work environment claims); *Powell v. Yellow Book USA, Inc*., 445 F.3d 1074, 1078 (8th Cir.2006) (holding "Title VII's purpose is not to smooth the rough edges of our daily discourse, nor to provide a federal cause of action for every slight").

To determine whether an environment is sufficiently hostile or abusive the Court looks at factors including "the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance." *Elmahdi v. Marriott Hotel Servs., Inc.,* 339 F.3d 645, 653 (8th Cir.2003); *Duncan v. Gen. Motors Corp.,* 300 F.3d 928, 934 (8th Cir.2002). However, Title VII does not impose "a code of workplace civility."  *Woodland v. Joseph T. Ryerson & Son, Inc*., 302 F. 3d 839, 843 (8th Cir. 2002).  "More than a few isolated incidents are required," and the harassment must be so intimidating, offensive, or hostile that it "poisoned the work environment." *Scusa v. Nestle U.S.A. Co.*, 181 F.3d 958, 967 (8th Cir.1999).

After a thorough review of the record, construing the evidence in the light most favorable to Everette, the Court finds that Everette has failed to allege facts that, even if assumed to be true,

rise to the level of creating an unreasonable interference with her work performance. Everette admits that she has no evidence that the conduct of her supervisor was based on race or gender and the record is devoid of any fact suggesting that race or gender was a factor in any decision or action by Everette's supervisor. Everette does not allege that her supervisor used racially offensive or even inappropriate language. At most, Everette complains that her supervisor yelled at her on three occasions and disciplined her unfairly. These facts do not rise to the level of actionable conduct which is severe or pervasive enough to affect a term, condition or privilege of her employment. *See Willis v. Henderson*, 262 F.3d 801, 809 (8th Cir.2001) (unpleasant conduct and rude comments do not rise to level of Title VII violation). *See also Breeding v. Arthur J. Gallagher & Co.*, 164 F.3d 1151, 1159 (8th Cir.1999) (concluding that unfair criticism and being yelled at did not amount to actionable harassment).

Accordingly, Defendant's motion for summary judgment is granted.

IT IS SO ORDERED this 10th day of February, 2009.

_____
James M. Moody
United States District Judge